DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Vi Tran has appealed from his conviction in the Summit County Court of Common Pleas for three counts of felonious assault and two counts of assault. This Court affirms in part, reverses in part, and remands for re-sentencing.
 I {¶ 2} On January 5, 2005, Defendant-Appellant Vi Tran was indicted on six counts of felonious assault, in violation of R.C.2903.11(A)(2), felonies of the second degree. On January 7, 2005, Appellant waived arraignment proceedings and entered a plea of "not guilty" to all counts. The charges arose from an altercation during a two-year-old child's birthday party on December 25, 2004. The party was held at Toan Chung's house in Akron, Ohio. Approximately seven individuals suffered stab wounds as a result of the incident.
 {¶ 3} Appellant was charged with three co-defendants: Andy Tran, Peter Tran and Tam Nguyen. A joint jury trial commenced on August 8, 2005. Appellant was convicted of felonious assault as charged in counts three, four, and six of the indictment. These counts involved victims Chau Nguyen, Trinh Hong, and Som Huy Nguyen respectively. Appellant was also convicted of assault, a lesser included offense of counts one and five of the indictment. These counts involved victims Steven Nguyen and Ryan Nguyen, respectively.
 {¶ 4} On August 16, 2005, Appellant was sentenced to eight years incarceration. However, on September 8, 2005, the court filed a journal entry which ordered that Appellant serve five years incarceration on each count of felonious assault and to serve six months on each count of assault, all to be served concurrently. The court also ordered Appellant to five years post-release control.
 {¶ 5} Appellant has timely appealed asserting five assignments of error. Assignments of error one and two have been consolidated to facilitate our review.
 II Assignment of Error Number One
"THE JURY VERDICT OF GUILTY, AS TO COUNT THREE OF THE INDICTMENT, CHARGING APPELLANT WITH FELONIOUS ASSAULT OF CHAU T. NGUYEN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 Assignment of Error Number Two
"THE JURY VERDICT OF GUILTY, AS TO COUNT FOUR OF THE INDICTMENT, CHARGING APPELLANT WITH THE FELONIOUS ASSAULT OF TRINH D. HOANG, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} In his first two assignments of error, Appellant has argued that his convictions for felonious assault against Chau Nguyen and Trinh Hoang are against the manifest weight of the evidence. We disagree.
 {¶ 7} In reviewing whether a conviction is against the manifest weight of the evidence, this Court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 8} Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the fact finder's resolution of the conflicting testimony. Id.
 {¶ 9} For purposes of the instant appeal, Appellant was convicted of felonious assault, in violation of R.C.2903.11(A)(2), a felony of the second degree. Pursuant to R.C.2903.11(A)(2): "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Attempt is defined by R.C.2923.02(A) as follows: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." One acts knowingly when "regardless of his purpose, * * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).
 {¶ 10} With regard to his conviction for the felonious assault of Chau Nguyen, Appellant has argued that Chau repeatedly and consistently testified that it was Peter Tran, Andy Tran, and Tam Nguyen who had assaulted him, and not Appellant. With regard to his conviction for the felonious assault of Trinh Hoang, Appellant has argued that Trinh's testimony that Appellant stabbed him was not credible due to conflicts in his testimony. We disagree.
 {¶ 11} We begin by noting that a defendant may be convicted of the principal offense if it is established that the defendant acted in complicity with another. See State v. Riley, 9th Dist. No. 21852, 2004-Ohio-4880, at ¶ 36, citing State v. Herring
(2002), 94 Ohio St.3d 246, 251. Complicity has been codified in R.C. 2923.03, which provides, in pertinent part to the instant appeal, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" R.C. 2923.03(A)(2). The Ohio Supreme Court has dictated the requirements for a conviction of complicity by aiding and abetting:
"To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v. Johnson (2001),93 Ohio St.3d 240, syllabus.
In the instant case, the trial court provided an instruction on complicity to the jury.
 {¶ 12} Because a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances of the case. State v. Logan (1979),60 Ohio St.2d 126, 131. Culpable mental states can be established by circumstantial as well as direct evidence. State v. Kincaid,
9th Dist. No. 01CA007947, 2002-Ohio-6116, at ¶ 22, citingKreuzer v. Kreuzer (2001), 144 Ohio App.3d 610, 613.
 {¶ 13} Further, circumstantial evidence used to prove an essential element of an offense does not have to be "`irreconcilable with any reasonable theory of innocence in order to support a conviction.'" State v. Daniels (June 3, 1998), 9th Dist. No. 18761, at *1, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus. It is well established that circumstantial evidence and direct evidence possess the same probative value. State v. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, at *6, quoting Jenks, 61 Ohio St.3d at paragraph one of the syllabus. "`Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" State v.Chisolm (July 8, 1992), 9th Dist. No. 15442, at 2, quotingJenks, 61 Ohio St.3d at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v. Lott (1990), 51 Ohio St.3d 160, 168, citing Hurt v. Charles J. Rogers Transp. Co. (1955),164 Ohio St. 329, 331. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusion in a case. Lott, 51 Ohio St.3d at 168.
 {¶ 14} The State produced the testimony of eighteen witnesses, including that of each of the victims.
 {¶ 15} Steven Nguyen attended the party and testified that when he arrived at around 7:30 p.m., all the men were in the basement of the house. Tam Nguyen, Peter Tran, Andy Tran, and Appellant then arrived and entered the basement. Steven testified that Tam tried "to be the tough guy." The owner of the house attempted to pull Tam away from the crowd, but Tam "start[ed] to * * * pull the people, like he want[ed] to fight somebody in there." Steven observed Tam having a heated discussion with Trinh; then, he heard Tam's voice get louder. An individual named Tai Vo then threw a beer bottle at a wall. It broke, and a fight ensued. Appellant and Peter Tran "all jump[ed] over" and Vi Tran (aka Pollo) "f[o]ught me in my — like in my right leg." Steven testified that although he did not see a knife, he knew that Appellant had stabbed him because "[Appellant] come over, he hit me on the leg. And then I don't even know that's a knife or what, but I feel very hurt in my leg." Steven looked down at his leg and saw blood coming out from his leg. Steven escaped upstairs, informed people of the mayhem, and someone dialed 9-1-1. Steven also sustained two stab injuries in his neck, chest, and right hand. While he did not actually see a knife, he stated that he "knew [he] got stabbed." Steven specifically identified Appellant as the person who stabbed him in his right leg.
 {¶ 16} Ryan Nguyen testified, via interpreter, regarding the fight. Ryan testified that Appellant stabbed him in the left thigh. Ryan explained, "Blood came shooting out and I got pain." Ryan also testified that he witnessed Appellant "stab other people." With regard to the "other people" who were stabbed, Ryan testified that he specifically heard Minh, Trinh, and Chau yell that they had been stabbed. However, Ryan testified that he did not see who stabbed them. Ryan eventually passed out and later found himself lying on the kitchen floor upstairs.
 {¶ 17} Toan Chung, the host of the party, testified that everybody was happy until Tam began "talking bad words." Toan testified that he left to cook some food, and when he returned to the basement, he observed that everybody was standing and that Tam was yelling and cursing. Toan testified that he asked Tam to leave, but that Tam did not listen. Toan testified that he grabbed Tam in an attempt to get him to leave and that Tam resisted, breaking off the stair railing. Toan then testified that Tai Vo, whom Tam "hated," threw the beer bottle. Toan testified that although the bottle did not hit Tam, it hit "close" to Tam, and Toan next observed Appellant attack Trinh. He then saw Andy Tran and Peter Tran attack Chau. Toan testified that he released Tam to call 911.
 {¶ 18} Minh Hoang, Trinh's brother, testified that Appellant stabbed him twice in the hand with a knife. Minh testified that Peter Tran kicked him in the back, knocking him to the floor. He then testified that Appellant, Peter Tran and Andy Tran surrounded and attacked him. Minh testified that over two years prior to the December 25, 2004 melee, Appellant had hit him in the face and beaten him up at another party.
 {¶ 19} Nga Mac testified, via interpreter, that she was at the party, "watching my children eating and watching people play card[s] and singing karaoke." She testified that she observed the following:
"[E]very one of the people's start crawling from down the basement up.
"And then I saw the person crawling up and bleeding.
"And then I saw a knife, throw the knife in the sink. I saw that.
"At that time, almost everybody got wounded except me, my husband, and couple other people tried to aid these people.
"And I saw people wound." [sic]
Nga described the knife to be a pocket knife, one that "can fold in and out." The knife was covered in blood. She saw Trinh come up from the basement. He pulled up his shirt and revealed a "big, long cut there." She also saw Chau come upstairs; when she asked him whether he was alright, Chau answered that he could not see anything. When the police arrived on the scene after the incident, she showed them the knife.
 {¶ 20} Som Huy Nguyen testified that Tam arrived and became disrespectful. Som testified that Tam began cursing and everyone in the basement became quiet. Som testified that shortly after Trinh, Minh and Chau arrived, Tam began yelling, cursing and threatening. Som testified that the host of the party, Toan, grabbed a hold of Tam. At that point, Tam became increasingly angry, threatening to "[k]ick the ass" of everyone at the party, and exclaiming his disrespect for all those in the basement. Som testified that Tai Vo became upset with Tam, and threw a beer bottle at the wall. Tam then got "mad" and broke the stair railing. Som then testified that "they attack." Som testified that Trinh began screaming for help and when he turned around, he saw Appellant and Andy Tran attacking Trinh. Som attempted to stop Appellant and Andy Tran and felt a "hand hitting my belly." At that point, Tam broke free from the grasp of Toan, and Tam joined in the attack. Som tried to stop him, but was too weak. Som then noticed that he had blood on his hand. Som testified that he then saw Tam "jump in" and attack Chau. Ultimately, Som retreated upstairs to the kitchen where his wife was located and left the house. Som testified that he did not see Appellant on the ground and did not see who stabbed Appellant.
 {¶ 21} Somephet Manivong, Som Huy Nguyen's wife, testified that she saw a number of profusely bleeding men ascend from the basement and lie on the kitchen floor.
 {¶ 22} Tuan Chung, Toan Chung's brother, testified that as the paramedics wheeled one of the victims past, Tuan asked the victim who had stabbed him. Tuan testified that the victim replied "[i]t was [Appellant]."
 {¶ 23} Officer Michael Rinn from the City of Akron Police Department responded to the scene. He described the state of the kitchen as follows:
"The kitchen was basically blood covered. There was blood everywhere. On all the cabinets, the floor.
"I mean, we were basically almost slipping on the blood, it was that much over there."
 {¶ 24} Officer Peter Waters testified that when he arrived at the scene individuals on the first floor of the house informed him that there had been a fight, that people got injured, and that the person responsible may still have been in the basement at that time. When Officer Waters walked downstairs into the basement, he saw blood all over the floor and walls in the basement. He saw two Asian males sitting in the back corner. One was wearing a yellow jacket and was bleeding from his leg; the other also had blood on his person. Officer Waters also saw another Asian male and a Caucasian male sitting on the floor. The individuals refused to respond to Officer Waters' questions and were uncooperative.
 {¶ 25} Ho Nguyen, a guest at the party, testified that he saw Peter Tran holding Chau and then observed two other men, namely Appellant and Peter Tran attack Chau. He testified that she saw Andy Tran punching Chau while he was on the floor. Further, Ho testified that he observed Appellant jump in and continue to attack Chau as well. He testified that he noticed that Appellant did not appear to have sustained any injuries.
 {¶ 26} Officer Scott Lietke testified that he saw a number of victims lying in the kitchen who had "severe lacerations and [were] bleeding badly." When he went downstairs he found Appellant, who appeared to be injured.
 {¶ 27} Detective James Pasheilich testified that during his interview with Andy Tran, that Andy could not explain why the "victims" had all ran upstairs bleeding while the four of them remained in the basement. Appellant informed him that Tam was repeatedly asked to leave and he refused. He also informed Det. Pasheilich that he was stabbed. He also acknowledged the presence of a knife, stating that he was "able to knock the knife away from whoever had it in their hand. He's able to see it on the floor. He's able to pick it up and * * * stab people." Appellant explained that he was trying to protect his brother, Andy Tran. Detective Pasheilich also testified that during his interview with Andy Tran, Andy also stated that he was trying to protect his brother, Appellant. Detective Pasheilich testified that based on his experience over the years with victims who had been stabbed by knives, the wounds that he saw on the victims in this case were consistent with stab wounds. While a suggestion was made on cross-examination that the wounds were made by a long fingernail, perhaps that of Tam, Detective Pasheilich answered that this was "absolutely not" the case.
 {¶ 28} The State introduced into evidence the blood-covered knife, the bloodied clothing of each victim and that of Appellant, a number of photographs that documented the injuries of each victim, and the medical records of each victim that indicated that the victims sustained stabbing injuries. The State also entered into evidence a photograph depicting a long piece of wood with a nail protruding from it. Numerous witnesses testified that Tam Nguyen had used this broken piece of stair railing as a weapon.
Chau Nguyen
 {¶ 29} Chau Nguyen testified to the following. He attended a birthday party at Toan Chung's house on December 25, 2004. Upon his arrival, he went down into the basement where a group of men had congregated. By the time he arrived, Appellant was in the basement with Peter and Andy Tran, and Tam Nguyen. There were other people in the basement as well, but he could not remember their names. Chau testified that Appellant went by the nickname "Pollo." Chau testified that in 2003 Tam confronted Trinh over some statements Trinh had made. During the confrontation, Tam hit Chau in the face. Chau further testified that Appellant had a "problem" with Chau's brother. Chau testified that shortly after he arrived in the basement, Tam began acting strangely, shouting and professing to want to "kick everybody [ass]." Then, Tam ripped off the stair rail and attacked one of the men in the basement.
 {¶ 30} Chau testified that at that point, Appellant, Peter Tran and Andy Tran were sitting quietly. At some point, a beer bottle was thrown on the floor and broken. Chau got up and went to the restroom located in the basement. At that time, Peter Tran and Andy Tran attacked him. Chau testified that he got a "hole in [his] belly and stuff on [his] hands." He testified that Andy Tran, Peter Tran and Tam attacked him by biting and stabbing him. Although he could not recall what he was stabbed with, he could feel an object. Chau testified that he did not know why he was attacked.
Trinh Hoang
 {¶ 31} Trinh testified that Tam became belligerent during the party and was asked to leave. Trinh testified that Tam tore the stair railing and began waving it, yelling that he was going to stab an individual named Tai. Trinh testified that he was stabbed by Appellant. Trinh testified that he saw that Appellant had stabbed him with a knife. Trinh testified that after he had been stabbed, he ran upstairs to get help. Trinh testified that he did not see that Appellant had been stabbed or that he was saying that he had been stabbed. Trinh denied that he had stabbed Appellant and testified that he did not know who, if anybody did. Trinh testified that he managed to get upstairs to the kitchen where his friend Toan Chung helped him. Trinh testified that he was "hurt" and "blurry." Trinh testified that he was bleeding profusely and was transported by ambulance to Akron General Hospital.
 {¶ 32} Based upon our review of the record, this Court cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice when it found Appellant guilty of felonious assault with respect to each of the victims. SeeOtten, 33 Ohio App.3d at 340. The record indicates that Appellant participated in the melee as a whole and that he and his fellow defendants were the primary antagonists. Further, witnesses testified that they saw Appellant attack both Trinh and Chau. At the very least, the jury could conclude that Appellant "supported, assisted, encouraged, cooperated with, advised, or incited" the commission of felonious assault, based on the direct and circumstantial evidence presented at trial. See Riley at ¶ 36; Herring, 94 Ohio St.3d at 251.
 {¶ 33} Further, this Court will not overturn a conviction because the jury chose to believe the testimony offered by the prosecution. See State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at *2. This Court has held that, "in reaching its verdict, the jury is free to believe, all, part, or none of the testimony of each witness." Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35, citing State v. Jackson
(1993), 86 Ohio App.3d 29, 33. As the finder of fact, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. See State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Thus, this Court will defer to the factfinder's judgment on matters of credibility. State v. Young, 9th Dist. No. 22636, 2006-Ohio-68, at ¶ 35, citing State v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at *6.
 {¶ 34} Accordingly, we find that Appellant's conviction for felonious assault as to Chau Nguyen and Trinh Hoang was not against the manifest weight of the evidence.
 {¶ 35} Appellant's first and second assignments of error lack merit.
 Assignment of Error Number Three
"THE MISDEMEANOR ASSAULT CONVICTIONS, AS TO COUNTS ONE AND TWO, CHARGING APPELLANT WITH FELONIOUS ASSAULT OF STEVEN HGUYEN [SIC] AND MINH HOAN [SIC], ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 36} In his third assignment of error, Appellant has argued that his convictions for assault against Steven Nguyen and Minh Hoang are against the manifest weight of the evidence. We find that Appellant's argument is moot.
 {¶ 37} Initially, we note that Appellant has specifically argued that his conviction for assault of Minh Hoang, as charged in count two, is against the manifest weight of the evidence. However, the record indicates that Appellant was found "not guilty" of assault as to count two of the indictment.[1]
Accordingly, we will disregard Appellant's arguments regarding count two and review count one.
 {¶ 38} As to Appellant's misdemeanor assault conviction as to count one of the indictment, Appellant has fully served the six month sentence for his conviction. Appellant has acknowledged this fact, yet has asked us to review the evidence regardless. We decline to do so as Appellant's argument as to his conviction for misdemeanor assault is moot.
 {¶ 39} The Ohio Supreme Court has held that "[w]here a defendant, convicted of a criminal offense, has * * * completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction." State v. Berndt
(1987), 29 Ohio St.3d 3, 4, quoting State v. Wilson (1975),41 Ohio St.2d 236, syllabus. See also State v. McCombs, 9th Dist. No. 22837, 2006-Ohio-3289, at ¶ 16. In State v. Payne, 9th Dist. No. 21178, 2003-Ohio-1140, this Court found that the appellant would not suffer any collateral disability or loss of civil rights where the sentence ran concurrently with a longer felony sentence and the six month misdemeanor assault sentence had been fully served. Id. at ¶ 12. Accordingly, we dismissed the appellant's assignment of error as moot. Id.
 {¶ 40} Likewise, in the present case, Appellant will suffer no collateral disability or loss of civil rights from his conviction of misdemeanor assault. He was sentenced to six months incarceration, to run concurrent with the longer felony sentences, and he has served that sentence in its entirety. Further, the burden is on Appellant to present some evidence that he will suffer collateral disability or loss of civil rights.Berndt, 29 Ohio St.3d at 4. Therefore, Appellant's assignment of error is moot unless he has "at some point in this proceeding offered evidence from which an inference can be drawn that [he] will suffer some collateral legal disability or loss of civil rights." Id.
 {¶ 41} An exhaustive review of the record has revealed that Appellant has not offered any evidence to support such a claim. The record has revealed a total lack of any reference to a claim of collateral disability or loss of civil rights resulting from his conviction. Additionally, Appellant's argument in support of assignment of error number three is directed solely at the weight of the evidence.
 {¶ 42} Accordingly, we decline to address Appellant's third assignment of error. See, e.g., McCombs, supra; Payne, supra.
 Assignment of Error Number Four
"THE COURT COMMITTED ERROR PREJUDICIAL TO APPELLANT BY ADMITTING OTHER ACTS EVIDENCE OVER OBJECTION."
 {¶ 43} In his fourth assignment of error, Appellant has argued that the court erred by admitting prejudicial "other acts evidence" into the record. Specifically, Appellant has argued that the court's reason for admitting the evidence — motive — was not at issue in the case because the December 25, 2004 melee was "clearly a spontaneous altercation." We disagree.
 {¶ 44} This Court has held that trial courts have broad discretion to determine whether evidence should be excluded.State v. McCoy, 9th Dist. No. 22373, 2005-Ohio-4262, at ¶ 8, citing State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Accordingly, a "trial court's decision will be reversed only upon a finding that the trial court abused its discretion." Id., citing Williams v. Oeder (1995),103 Ohio App.3d 333, 341. An abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 45} Evid.R. 404(B) states:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 46} In the matter sub judice, the State questioned Trinh about an altercation that occurred in Mason Park during a game of volleyball. According to Trinh's testimony, Tam confronted Trinh for "speak[ing] very bad thing about him" and subsequently hit him. According to Trinh, Appellant also joined in the fray, by hitting Chau's brother, Chau B. ("Chung") Nguyen in the head with a stick. Chau had previously testified regarding the confrontation at Mason Park and had stated that Appellant had a problem with his brother.[2] Specifically, Appellant has objected to the testimony that he hit Chung Nguyen with a stick. Appellant has argued that this evidence had no bearing on the criminal trial and that the trial court's admission of such evidence contributed to Appellant's conviction. We disagree.
 {¶ 47} Appellant is correct is his assertion that the improper admission of other acts evidence necessitates reversal only when there is a reasonable possibility that that the testimony contributed to the accused's conviction. State v.Treesh (2001), 90 Ohio St.3d 460, 483. That is, Appellant must demonstrate that he was prejudiced by the admission of the evidence if this Court is to reverse a conviction based upon such admission. State v. Sparks, 9th Dist. No. 22111,2005-Ohio-2154, at ¶ 21, citing State v. Galloway (Jan. 31, 2001), 9th Dist. No. 19752, at *5.
 {¶ 48} However, Appellant has not offered any evidence to demonstrate that the contested testimony contributed in any way to his conviction. Appellant has simply made the conclusory statement that "it can hardly be concluded that the evidence did not contribute to conviction." Appellant has cited no relevant case law, nor expanded his argument any further than that singular statement. See App.R. 16(A)(7).
 {¶ 49} This Court concludes that Trinh's testimony was not admitted for the purpose of showing that Appellant acted in conformity with his conduct at Mason Park. Further, we find that the testimony was not admitted to demonstrate Appellant's potential propensity for violence. Rather, as we have discussed above, other acts evidence is allowable under Evid.R. 404(B) for the purpose of showing motive.
 {¶ 50} In the present case, it is reasonable to conclude that Trinh's testimony was admitted to demonstrate motive. In fact, the trial court stated on the record that it was allowing the testimony for just that purpose. While Trinh's testimony indicates that Appellant did not actually hit Trinh during the altercation at Mason Park, it demonstrates the existence of bad blood and a history of confrontations between Tam's faction (including Appellant) and Trinh and Minh Hoang, Chau Nguyen, and his brother, Chung Nguyen.
 {¶ 51} Trinh's testimony demonstrates that these two groups had confrontations in the past and it is reasonable to conclude that those issues may have been the cause of the December 25, 2004 brawl. Further, and most importantly, Trinh's testimony demonstrates Appellant's relationship with Tam and his willingness to support Tam in a fight. This Court finds that Trinh's testimony was permissible under Evid.R. 404(B) as it was admitted to demonstrate motive for the December 25, 2004 altercation.
 {¶ 52} Accordingly, we cannot find that the trial court abused its discretion when it allowed Trinh's testimony regarding the altercation at Mason Park. Based on the foregoing, Appellant's fourth assignment of error lacks merit.
 Assignment of Error Number Five
"PURSUANT TO THE SUPREME COURT DECISION IN STATE V. FOSTER,
APPELLANT MUST BE RESENTENCED."
 {¶ 53} In his fifth assignment of error, Appellant has argued that his sentence is unconstitutional and that he is entitled to re-sentencing pursuant to State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. Specifically, Appellant has argued that in ordering his sentence, the trial court made factual determinations that were neither submitted to the jury nor admitted by Appellant. We agree.
 {¶ 54} The record indicates that Appellant raised a constitutional challenge to his sentence at the sentencing hearing. Further, the State has conceded that Appellant should be re-sentenced.
 {¶ 55} In Foster, the Court found R.C. 2929.14(B) unconstitutional and excised it from the sentencing statute. Id. at paragraphs one and two of syllabus. In addition, the Court excised R.C. 2953.08(G) for the same reason. State v.Dudukovich, 9th Dist. No. 05CA008729, 2006-Ohio-1309, at ¶ 20, citing Foster at ¶ 97. Ultimately, the Court found that the defendant-appellants were entitled to a new sentencing hearing pursuant to the Court's holding. Foster at ¶ 105.
 {¶ 56} In the present case, the trial court made factual determinations and imposed a non-minimum sentence pursuant to R.C. 2929.14(B). Thus, in accordance with Foster, we find that Appellant's sentence under R.C. 2929.14(B) is unconstitutional, and we remand the case to the trial court for a new sentencing hearing.
 {¶ 57} Appellant's fifth assignment of error has merit.
 III {¶ 58} Based on the foregoing, Appellant's first and second assignments of error are overruled. Appellant's third assignment of error is dismissed as moot. Appellant's fourth assignment of error is overruled. Appellant's fifth assignment of error is sustained. Appellant's conviction in the Summit County Court of Common Pleas is affirmed and Appellant's sentence is reversed. The cause is remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Slaby, P.J. concurs.
Carr, J. concurs in judgment only.
[1] Appellant was also found "not guilty" of felonious assault as to count two of the indictment.
[2] Chau also testified that he had been attacked by Tam when he had attempted to intervene on Trinh's behalf.