[Cite as *State v. Rivers*, 2011-Ohio-2447.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| STATE OF OHIO | | C.A. No. 10CA009772 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DOUGLAS EDWARD RIVERS | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No. 09CR078383 |

DECISION AND JOURNAL ENTRY

Dated: May 23, 2011

CARR, Judge.

{¶1} Douglas Rivers appeals the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} This case stems out of a carjacking which occurred on February 26, 2009, at the Midway Mall in Elyria, Ohio. On June 4, 2009, Douglas Rivers was indicted by the Lorain County Grand Jury on one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fourth degree. The indictment specified that the property received was a motor vehicle as defined by R.C. 4501.01. The case was assigned Case No. 09CR078383. Rivers had previously been indicted in Case No. 09CR077819 on one count of robbery in violation of R.C. 2911.02(A)(2), and two counts of theft in violation of R.C. 2913.02(A)(1). On June 9, 2009, the State filed a motion to consolidate Case No. 09CR078383 and Case No. 09CR077819. On June 15, 2009, the trial court issued an order granting the motion to consolidate.

{¶3} The matter proceeded to jury trial on June 22, 2009. On June 24, 2009, Rivers was found guilty of receiving stolen property and acquitted of all other charges. On August 25, 2009, Rivers was sentenced to 18 months imprisonment and ordered to pay a fine of $2,500. On September 2, 2009, Rivers filed a notice of appeal. On December 9, 2009, this Court issued a journal entry indicating that Rivers' sentence was void due to an error in the imposition of post-release control. This Court vacated Rivers' sentence and remanded the matter to the trial court for a new sentencing hearing. The trial court subsequently conducted a de novo sentencing hearing on January 28, 2010, and issued a new sentencing entry on January 29, 2010. Rivers filed his second notice of appeal on February 18, 2010.

{¶4} On appeal, Rivers raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

"THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT APPELLANT'S CONVICTION OF RECEIVING STOLEN PROPERTY."

## ASSIGNMENT OF ERROR II

"APPELLANT'S CONVICTION FOR RECEIVING STOLEN PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF ARTICLE IV, SECTION 3, OF THE OHIO CONSTITUTION."

{¶5} In his first assignment of error, Rivers argues that his receiving stolen property conviction was not supported by sufficient evidence. In his second assignment of error, Rivers argues that his conviction for receiving stolen property was against the manifest weight of the evidence. This Court disagrees with both contentions.

{¶6} The elements of receiving stolen property are set forth in R.C. 2913.51(A), which provides, "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft

offense." "If the property involved is a motor vehicle, as defined in [R.C.] 4501.01, *** receiving stolen property is a felony of the fourth degree." R.C. 2913.51(C). The Revised Code defines "motor vehicle" as "any vehicle, including mobile homes and recreational vehicles, that is propelled or drawn by power other than muscular power or power collected from overhead electric trolley wires." R.C. 4501.01(B). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Receive is not defined in the statute, but a generally accepted definition of receive is to acquire 'control in the sense of physical dominion over or the apparent legal power to dispose of said property.'" *State v. Brewer* (July 19, 2000), 9th Dist. No. 99CA007483, quoting *State v. Jackson* (1984), 20 Ohio App.3d 240, 242.

{¶7} The Supreme Court of Ohio and the United States Supreme Court have concluded that, "'[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.'" *State v. Arthur* (1975), 42 Ohio St.2d 67, 68, quoting *Barnes v. United States* (1973), 412 U.S. 837. "Possession of stolen property may be individual or joint, actual or constructive. Proof of control or dominion is essential. But control or dominion may be achieved through the instrumentality of another." *State v. Wolery* (1976), 46 Ohio St.2d 316, 332. See, also, *State v. Colon*, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶14.

{¶8} This Court has stated that "[a] passenger in a vehicle may be convicted for receiving stolen property where there is evidence the passenger knew the vehicle was stolen and fled from the police." *State v. Johnson*, 9th Dist. No. 23515, 2007-Ohio-4133, ¶15, citing *In re*

*Bickley* (June 23, 1993), 9th Dist. No. 15974, and *Matter of Windle* (Dec. 2, 1993), 10th Dist. No. 93AP-746. "While '[m]ere presence in a stolen vehicle is never sufficient to convict for receiving stolen property,' if the passenger has 'reasonable cause to believe that the vehicle is stolen and either remain[s] for some time in the vehicle after that knowledge or participate[s] or aid[s] in the theft itself[,]' a conviction for receiving stolen property can stand." Id., quoting *In re Bromfield*, 1st Dist. No. C-030446, 2004-Ohio-450, at ¶12.

**Sufficiency of the Evidence**

{¶9}   The law pertaining to a challenge to the sufficiency of the evidence is well settled:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Galloway* (Jan. 31, 2001), 9th Dist. No. 19752.

The test for sufficiency requires a determination of whether the State has met its burden of production at trial. *State v. Walker* (Dec. 12, 2001), 9th Dist. No. 20559; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390.

{¶10}  In support of his first assignment of error, Rivers argues that the State failed to submit any evidence of constructive possession of the automobile, other than the fact that Rivers was inside the automobile. Rivers contends that there was no evidence presented that he exercised dominion or control over the automobile. In support of his position, Rivers cites to the Eighth District's decision in *State v. Sims* (1983), 10 Ohio App.3d 56, for the proposition that a mere passenger in a vehicle cannot be convicted of receiving stolen property. Rivers also emphasizes that he was acquitted of the companion charges of robbing the owner of the automobile and theft of an automobile.

**{¶11}** Like the Eighth District, this Court has also held that more than simply being present is required for a passenger to be convicted of receiving stolen property. *Johnson* at ¶15. If the passenger has reasonable cause to believe the vehicle is stolen, however, and either remains in the vehicle for some time or participates or aids in the theft, a conviction for receiving stolen property is proper. Id. On this last point, Rivers emphasizes that he was not convicted of theft of the vehicle. His acquittal on this count is not determinative of whether there was sufficient evidence to prove his guilt of receiving stolen property. Even though the jury found that there was not evidence beyond a reasonable doubt that he committed all of the elements of theft of the vehicle, that does not mean that Rivers did not participate or aid in the theft. With these legal principles in mind, we turn to the evidence presented at trial.

**{¶12}** The story begins before Ms. Mayo-Silvey was shoved to the Midway Mall parking lot and her vehicle stolen late on a February afternoon. Several hours earlier, a Macy's security officer watched two young men, Rivers and David Washington, on store security monitors. She watched them because of the number of shoplifting incidents where people grab merchandise and run out the door to a waiting car. She monitored them because they stood at the south doors at Macy's, looking outside as if they were waiting for a car. Rivers and the other youth left Macy's after about thirty minutes.

**{¶13}** Rivers and his accomplice returned to Macy's about 4:15 pm. They stood in the vestibule of the west doors where they stared into the parking lot. Shortly after the Macy's security officer observed Rivers and his co-defendant at the west doors, a carjacking occurred in the west parking lot just outside of Macy's. The Macy's security officer did not see the two men at the mall again that day.

{¶14} Ms. Mayo-Silvey was shopping at the Midway Mall Macy's on a February afternoon. She left the store around 4:19 p.m., exiting through west-facing doors. She was attacked from the side and shoved to the ground. As he choked her, her assailant demanded her keys. She felt something – an elbow or a gun – pressing in her back as she struggled. After she gave up her keys, her assailant got into Ms. Mayo-Silvey's car and drove away. He drove toward the Sears Automotive Center and then toward Interstate 90. Police arrived within minutes and pursued the stolen car.

{¶15} Police officers from multiple agencies chased the car. The driver fled on I-90, exceeding 100 m.p.h. at times. The car weaved in and out of traffic. After running over "stop sticks," devices intended to deflate the tires, the car continued its reckless driving. The vehicle exited the highway by driving in the wrong direction up an interstate on-ramp. During this time, one of the officers was able to identify that Rivers was a passenger in the fleeing auto, and the defendant stipulated that he was present in the vehicle.

{¶16} The vehicle eventually exited the interstate, turned down a side street, sideswiping a car in the process, and turned in to a wooded area. Rivers and the driver fled from the car. Rivers was caught in the woods.

{¶17} Rivers' general position on appeal is that the State never demonstrated that he was in possession of the stolen vehicle. In viewing the evidence presented at trial in the light most favorable to the State, however, we conclude that the State presented sufficient evidence to prove that Rivers was guilty of receiving stolen property.

{¶18} Although Rivers focuses on possession, he does so too narrowly. We agree that mere presence may not be sufficient, but this case does not stand on mere presence alone. Rivers and the driver were observed together at the mall two hours before the carjacking. Just moments

before the carjacking, Rivers and his accomplice stood at a west-facing door in Macy's, staring into the parking lot. Moments later, Ms. Mayo-Silvey was pushed to the ground, an object shoved in her back, and her keys taken from her. Moments after the attacker drove the car away, as she still sat on the ground, she called 911. She reported the attack and theft of her car. She also described her car driving toward Sears Auto Center and then leaving the mall parking lot toward I-90.

{¶19} This sequence of events demonstrates that Rivers appeared with Ms. Mayo-Silvey's attacker at Macy's where they stayed for several hours without making any purchases. Shortly before the carjacking, they were together, watching the parking lot where the crime occurred. Moments after the carjacking, Ms. Mayo-Silvey watched her car drive away from her and exit the parking lot.

{¶20} Considering the evidence in the light most favorable to the State, there was sufficient evidence to prove that Rivers assisted the driver in watching for a carjacking victim. Because of the speed of the attack, and the quick getaway of the car, the evidence supports the conclusion that Rivers stood by as his accomplice attacked Ms. Mayo-Silvey. Rivers could not have been unaware of the attack because Ms. Mayo-Silvey reported that, after the attack, the car drove away and left the mall parking lot; there was no evidence that the car stopped to pick up Rivers, who would have been unaware of the attack and theft of the auto.

{¶21} We are also not persuaded that the jury's acquittal of Rivers on counts related to theft of the car requires an acquittal on receiving stolen property. The evidence, considered in a light most favorable to the State, proves that Rivers was a passenger, as he admitted at trial, in the stolen vehicle after participating or aiding in the theft of the property. Further, Rivers' subsequent flight from law enforcement on foot is "evidence of consciousness of guilt, and thus

of guilt itself." *State v. Kiley*, 9th Dist. No. 10CA009757, 2011-Ohio-1156, at ¶28, quoting *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, at ¶167.    The State demonstrated that the two individuals who were apprehended after the chase had been seen together earlier in the day at the Midway Mall.  Under these circumstances where Rivers had reason to believe that the vehicle was stolen and fled from law enforcement, the evidence presented at trial was sufficient to find Rivers guilty of receiving stolen property.  See *Johnson* at ¶15.

{¶22}  Furthermore, Rivers' argument that he was not in possession of the vehicle does not take into account the fact that the jury could have found that he was complicit in receiving stolen property.  The jury was given a complicity instruction with respect to all four charges against Rivers.  In order to convict someone of complicity, the State must prove that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime.  *State v. Johnson* (2001), 93 Ohio St.3d 240, 245.  The defendant's participation may be inferred from his behavior before and after the offense occurs.  Id.  As noted above, Rivers was seen with the driver of the stolen vehicle at Macy's approximately five minutes before the carjacking occurred.  As the two young men were in the west vestibule of Macy's, they stared into the parking lot where the carjacking subsequently occurred.  There is no dispute that Rivers was a passenger in the vehicle.  After the vehicle was the subject of a high speed car chase and eventually drove into a wooded area off of Clemens Rd., Rivers attempted to flee from law enforcement on foot.  Given the evidence presented in this case, the jury could have determined that Rivers was, at a minimum, complicit in receiving of the stolen vehicle.

{¶23}  It follows that Rivers' first assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶24}  An appellate court's review of the sufficiency of the evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600.  "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion."  Id., citing *Thompkins*, 78 Ohio St.3d at 390 (Cook J., concurring).

{¶25}  A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶11.  Rather,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

> "Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387.  Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Id." *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶5.

This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶26}  In support of his position that his conviction was against the manifest weight of the evidence, Rivers resubmits the arguments made in support of his first assignment of error

where he argued that his conviction was not supported by sufficient evidence. After setting out the pertinent law in his merit brief, Rivers states, "It is submitted that Rivers' conviction was against the manifest weight of the evidence, and in support the arguments in Section I are resubmitted."

**{¶27}** Based on the aforementioned evidence, we conclude that the jury in this case did not clearly lose its way and create such a manifest miscarriage of justice that Rivers' conviction must be reversed. The State presented credible evidence which tended to show that Rivers had reason to know that vehicle was stolen, remained in the vehicle throughout the pursuit, and fled from the police on foot after abandoning the vehicle. As was the case in *Johnson*, 2007-Ohio-4133, a reasonable juror here could have concluded that Rivers was involved in stealing the vehicle, was with the individual who stole and drove the vehicle, or at least knew the vehicle was stolen when he got into it and/or ran from law enforcement. *Johnson* at ¶25. "This is enough to convict him of receiving stolen property." Id., citing *State v. Lombardi*, 9th Dist. No. 22435, 2005-Ohio-4942, at ¶20. As Rivers has not pointed to any evidence which would outweigh the evidence presented by the State, we conclude that the jury did not clearly lose its way in finding him guilty of receiving stolen property. Rivers' second assignment of error is overruled.

### III.

**{¶28}** Rivers' first and second assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

DICKINSON, P. J.
CONCURS

BELFANCE, J.
CONCURS IN JUDGMENT ONLY

APPEARANCES:

ERIN A. DOWNS, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and AMY IOANNIDIS BARNES, Assistant Prosecuting Attorney, for Appellee.